# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 8700
Washington, DC 20530,

STATE OF FLORIDA
Office of Attorney General
PL-01, The Capitol
Tallahassee, FL 32399,

STATE OF ILLINOIS
Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601,

STATE OF MINNESOTA
Minnesota Attorney General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101,

COMMONWEALTH OF PENNSYLVANIA
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120,

and

STATE OF WISCONSIN
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707,

$\qquad$ *Plaintiffs*,

$\qquad$ v.

WASTE MANAGEMENT, INC.
1001 Fannin Street
Houston, TX 77002,

Civil Action No.:

Judge:

and

ADVANCED DISPOSAL SERVICES, INC.
90 Fort Wade Road
Ponte Vedra, FL 32081,

                          *Defendants*.

## COMPLAINT

The United States of America ("United States"), acting under the direction of the

Attorney General of the United States, and the States of Florida, Illinois, Wisconsin, and

Minnesota as well as the Commonwealth of Pennsylvania ("Plaintiff States"), bring this civil

antitrust action against Defendants Waste Management, Inc. ("WMI") and Advanced Disposal

Services, Inc. ("ADS") to enjoin WMI's proposed acquisition of ADS. The United States and

Plaintiff States complain and allege as follows:

## I.        NATURE OF THE ACTION

1.        WMI's proposed $4.6 billion acquisition of its competitor, ADS, would combine

the largest and fourth-largest solid waste management companies in the United States. The

proposed transaction presents the most significant consolidation in the waste industry in over a

decade and would eliminate critical competition in over 50 local markets in ten states in the

eastern half of the United States.

2.        WMI and ADS compete aggressively against each other to provide waste

collection and waste disposal services in these local markets. In each of these local markets,

WMI and ADS are either the only two or two of only a few significant providers of small

container commercial waste ("SCCW") collection and municipal solid waste ("MSW") disposal,

which are essential for businesses, municipalities, and towns throughout the country.

2

3.      If the transaction proceeds to close in its current form, consumers would likely pay higher prices and receive lower quality service. Competition between WMI and ADS has resulted in lower prices and improved service to numerous customers, including towns and cities, restaurants, offices, apartment buildings, and other businesses. Collection customers rely on WMI and ADS to collect their waste reliably and on a regular basis. In the absence of competition between WMI and ADS, these customers would likely pay more for waste collection and receive lower quality service. Disposal customers, such as independent and municipally-owned waste haulers, rely on WMI and ADS for affordable and accessible waste disposal options, including landfills and transfer stations, to dispose of the waste they collect from towns, cities, and other municipalities. If the transaction is consummated as proposed by Defendants, these disposal customers would likely face higher fees and less favorable access to WMI's and ADS's disposal facilities.

4.      The proposed transaction will likely substantially lessen competition for SCCW collection and MSW disposal in over 50 local markets in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and therefore should be enjoined.

## II.   THE PARTIES AND THE TRANSACTION

5.      WMI is a Delaware corporation headquartered in Houston, Texas. WMI is the largest solid waste hauling and disposal company in the United States and provides waste collection, recycling, and disposal (including transfer) services. WMI operates in 49 states and the District of Columbia. For 2019, WMI reported revenues of approximately $15.5 billion.

6.      ADS is a Delaware corporation headquartered in Ponte Vedra, Florida. It is the fourth-largest solid waste hauling and disposal company in the United States and provides waste

collection, recycling, and disposal (including transfer) services. ADS operates in 16 states, primarily in the Midwest, Mid-Atlantic, and Southeast regions of the United States. For 2019, ADS reported revenues of approximately $1.6 billion.

7.      On April 14, 2019, WMI agreed to acquire all of the outstanding common stock of ADS for approximately $4.9 billion. On June 24, 2020, WMI and ADS agreed to a revised purchase price of approximately $4.6 billion.

## III.    JURISDICTION AND VENUE

8.      The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

9.      The Plaintiff States bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18. The Plaintiff States, by and through their respective Attorneys General, bring this action as parens patriae on behalf of and to protect the health and welfare of their citizens and the general economy in each of their states.

10.     Defendants' activities substantially affect interstate commerce. They provide SCCW collection and MSW disposal throughout the eastern half of the United States. This Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

11.     Defendants have consented to venue and personal jurisdiction in this judicial district. Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b) and (c).

**IV.     RELEVANT MARKETS**

    **A.     Product Markets**

        **1.     Small Container Commercial Waste Collection**

12.     SCCW (small container commercial waste) collection is a relevant product market. Waste collection firms—also called haulers—collect MSW (municipal solid waste) from residential, commercial, and industrial establishments, and transport that waste to a disposal site, such as a transfer station, landfill or incinerator, for processing and disposal.

13.     SCCW collection is the business of collecting MSW from commercial and industrial accounts, usually in small containers (*i.e.*, dumpsters with one to ten cubic yards capacity), and transporting or hauling such waste to a disposal site. Typical SCCW collection customers include office and apartment buildings and retail establishments (*e.g.*, stores and restaurants).

14.     SCCW collection is distinct from the collection of other types of waste such as residential and roll-off waste, each of which is subject to its own regulatory scheme dictating the manner in which it must be collected. An individual commercial customer typically generates substantially more MSW than a residential customer. To handle this high volume of MSW efficiently, haulers often provide commercial customers with small containers for storing the waste. Haulers organize their commercial accounts into routes, and collect and transport the MSW generated by these accounts in front-end load ("FEL") trucks uniquely well suited for commercial waste collection.

15.     On a typical SCCW collection route, an operator drives an FEL truck to the customer's container, engages a mechanism that grasps and lifts the container over the front of

the truck, and empties the container into the vehicle's storage section where the waste is compacted and stored. The operator continues along the route, collecting MSW from each of the commercial accounts, until the vehicle is full. The operator then drives the FEL truck to a disposal facility, such as a transfer station, landfill, or incinerator, and empties the contents of the vehicle. Depending on the number of locations and amount of waste collected on the route, the operator may make one or more trips to the disposal facility in servicing the route.

16.     In contrast to an SCCW collection route, a residential waste collection route is highly labor intensive. A residential customer's MSW is typically stored in much smaller containers, (*e.g.*, garbage bags or trash cans) and instead of using an FEL truck manned by a single operator, residential waste collection haulers routinely use rear-end load or side-load trucks manned by two- or three-person teams. On residential routes, crews often hand-load the customer's MSW by tossing garbage bags and emptying trash cans into the vehicle's storage section. In light of these differences, haulers typically organize commercial customers into separate routes from residential customer routes.

17.     Roll-off collection also is not a substitute for SCCW collection. A roll-off container is much larger than an SCCW container, and is serviced by a truck capable of carrying a roll-off container rather than an FEL truck. Unlike SCCW customers, multiple roll-off customers are not served between trips to the disposal site, as each roll-off truck is typically only capable of carrying one roll-off container at a time.

18.     Other types of waste collection, such as hazardous or medical waste collection, also are not substitutes for SCCW collection. These forms of collection differ from SCCW

6

collection in the hauling equipment required, the volume of waste collected, and the facilities where the waste is disposed.

19.    Thus, absent competition from other SCCW collection firms, SCCW collection providers could profitably increase their prices without losing significant sales to firms engaged in the provision of other types of waste collection services. In other words, in the event of a small but significant price increase for SCCW collection, customers would not substitute to other forms of collection in sufficient numbers so as to render the price increase unprofitable. SCCW collection is therefore a line of commerce, or relevant product market, for purposes of analyzing the effects of the acquisition under Section 7 of the Clayton Act.

### 2.    Municipal Solid Waste Disposal

20.    MSW (municipal solid waste) disposal is a relevant product market. MSW is solid putrescible waste generated by households and commercial establishments such as retail stores, offices, restaurants, warehouses, and industrial facilities. MSW has physical characteristics that readily distinguish it from other liquid or solid waste (*e.g.*, waste from manufacturing processes, regulated medical waste, sewage, sludge, hazardous waste, or waste generated by construction or demolition sites).

21.    Haulers must dispose of all MSW at a permitted disposal facility. There are three main types of disposal facilities—landfills, incinerators, and transfer stations. Such facilities must be located on approved types of land and operated under prescribed procedures. Federal, state, and local safety, environmental, zoning, and permit laws and regulations dictate critical aspects of storage, handling, transportation, processing, and disposal of MSW. In less densely populated areas, MSW often is disposed of directly into landfills that are permitted and regulated

by a state and the federal government. Landfill permit restrictions often impose limitations on the type and amount of waste that can be deposited. In many urban and suburban areas, however, landfills are scarce due to high population density and the limited availability of suitable land. As a result, MSW generated in such areas often is burned in an incinerator or taken to a transfer station. A transfer station is an intermediate disposal site for the processing and temporary storage of MSW before it is transferred, in bulk, to more distant landfills or incinerators for final disposal.

22. Some haulers—including WMI and ADS—are vertically integrated and operate their own disposal facilities. Vertically-integrated haulers often prefer to dispose of waste at their own disposal facilities. Depending on the market, vertically-integrated haulers may sell a portion of their disposal capacity to customers in need of access to a disposal facility. These disposal customers include independent (non-vertically integrated) and municipally-owned haulers. Disposal customers rely on the availability of cost-competitive disposal capacity to serve their own collection customers and to compete for new ones.

23. Due to strict laws and regulations that govern the disposal of MSW, there are no reasonable substitutes for MSW disposal, which must occur at landfills, incinerators, or transfer stations. Thus, in the event of a small but significant price increase from MSW disposal firms, customers would not substitute to other forms of disposal in sufficient numbers so as to render the price increase unprofitable. MSW disposal is therefore a line of commerce, or relevant product market, for purposes of analyzing the effects of the acquisition under Section 7 of the Clayton Act.

B.     **Relevant Geographic Markets**

1.     **Small Container Commercial Waste Collection**

24.     SCCW collection generally is provided in highly localized areas. This is because a hauler needs a large number of commercial accounts that are reasonably close together to operate efficiently and profitably. If there is significant travel time between customers, then the hauler earns less money for the time that the truck operates. Haulers, therefore, try to minimize the "dead time" in which the truck is operating and incurring costs from fuel, wear and tear, and labor, but not generating revenue from collecting waste. Likewise, customers must be near the hauler's base of operations as it would be unprofitable for a truck to travel a long distance to the start of a route. Haulers, therefore, generally establish garages and related facilities to serve as bases within each area served.

25.     As currently contemplated, the transaction would likely cause harm in 33 relevant geographic markets for SCCW collection located in six states: Alabama, Florida, Georgia, South Carolina, Minnesota, and Wisconsin. Those 33 markets are identified in Appendix A. In each of these markets, a hypothetical monopolist of SCCW collection could profitably impose a small but significant non-transitory increase in price to local customers without losing significant sales to more distant competitors. Accordingly, each of the areas listed in Appendix A constitutes a relevant geographic market and section of the country for purposes of analyzing the effects of the acquisition under Section 7 of the Clayton Act.

2.     **Municipal Solid Waste Disposal**

26.     Collection trucks transport MSW to landfills, incinerators, and transfer stations for disposal. The price and availability of disposal sites close to a hauler's routes are major

factors that determine a hauler's competitiveness and profitability, as the cost of transporting MSW to a disposal site—including fuel, regular truck maintenance, and hourly labor—is a substantial component of the total cost of disposal. Haulers also prefer nearby disposal sites to minimize the FEL truck dead time. Due to the costs associated with travel time and customers' preference to have disposal sites close by, an MSW disposal provider must have local disposal facilities to be competitive. The relevant markets for MSW disposal markets are therefore local, often consisting of no more than a few counties.

27.     As currently contemplated, the transaction would likely cause harm in 24 relevant geographic markets for MSW disposal located in eight states: Alabama, Florida, Georgia, Illinois, Indiana, Michigan, Pennsylvania, and Wisconsin. Those 24 markets are identified in Appendix B. In each of these local markets, a hypothetical monopolist of MSW disposal could profitably impose a small but significant non-transitory increase in price for the disposal of MSW without losing significant sales to more distant disposal sites.

28.     Accordingly, each of the areas listed in Appendix B constitutes a relevant geographic market and section of the country for purposes of analyzing the effects of the acquisition under Section 7 of the Clayton Act.

## V.     ANTICOMPETITIVE EFFECTS

29.     The proposed transaction would substantially lessen competition and harm consumers in each relevant market by eliminating the substantial head-to-head competition that currently exists between WMI and ADS. Businesses, municipalities, independent haulers, and other customers would pay higher prices as a result of the acquisition.

30.     WMI's acquisition of ADS would remove a significant competitor for SCCW collection and MSW disposal in markets that are already highly concentrated and difficult to enter. WMI and ADS compete head-to-head for SCCW collection and/or MSW disposal customers in each of the 57 geographic markets identified in Appendices A and B. In these geographic markets, WMI and ADS each account for a substantial share of total revenue generated from SCCW collection and/or MSW disposal and, in each relevant market, are two of no more than four significant (*i.e.*, not fringe) competitors. *See* Appendices A and B (providing a complete list of the number of significant competitors in each relevant market pre-merger). In each SCCW collection market, collection customers including offices, apartment buildings, and retail establishments have been able to secure better collection rates and improved service by threatening to switch to the competing SCCW hauler. Likewise, in each MSW disposal market, independent haulers and municipalities have been able to negotiate more favorable disposal rates by threatening to move waste to the other competitor's disposal facilit(ies). In each of the relevant markets identified in Appendices A and B, the resulting increase in concentration, loss of competition, and the unlikeliness of significant entry or expansion would likely result in higher prices, lower quality and level of service, and reduced choice for SCCW collection and MSW disposal customers.

## VI.     ENTRY

### A.     Difficulty of Entry into Small Container Commercial Waste Collection

31.     Entry of new competitors into SCCW collection in each of the relevant markets identified in Appendix A would be difficult and time-consuming and is unlikely to prevent the harm to competition that is likely to result if the proposed transaction is consummated.

11

32.     A new entrant in SCCW collection could not provide a significant competitive constraint on the prices that market incumbents charge until achieving a minimum efficient scale and operating efficiency comparable to existing competitors. In order to obtain a comparable operating efficiency, a new competitor would have to achieve route densities similar to those of firms already in the market. Incumbents in a geographic market, however, can prevent new entrants from winning a large enough base of customers by selectively lowering prices and entering into longer term contracts with collection customers.

**B.    Difficulty of Entry into Municipal Solid Waste Disposal**

33.     Entry of new competitors into MSW disposal in each of the relevant markets identified in Appendix B would be difficult and time-consuming and is unlikely to prevent the harm to competition that is likely to result if the proposed transaction is consummated.

34.     A new entrant in MSW disposal would need to obtain a permit to construct a disposal facility or to expand an existing one, and this process is costly and time-consuming, typically taking many years. Land suitable for MSW disposal is scarce, as a landfill must be constructed away from environmentally-sensitive areas, including fault zones, wetlands, flood plains, and other restricted areas. Even when suitable land is available, local public opposition frequently increases the time and uncertainty of the permitting process.

35.     Construction of a new transfer station or incinerator also is difficult and time consuming and faces many of the same challenges as new landfill construction, including local public opposition.

36.     Entry by constructing and permitting a new MSW disposal facility would thus be costly and time-consuming and unlikely to prevent market incumbents from significantly raising

prices for MSW disposal in each of the disposal markets following the acquisition.

## VII.   VIOLATIONS ALLEGED

37.      WMI's proposed acquisition of ADS is likely to substantially lessen competition in each of the relevant markets set forth above in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

38.      The acquisition will likely have the following anticompetitive effects, among others, in the relevant markets:

      a.      actual and potential competition between WMI and ADS will be eliminated;

      b.      competition generally will be substantially lessened; and

      c.      prices will likely increase and quality and the level of service will likely decrease.

## VIII.   REQUEST FOR RELIEF

39.      The United States and the Plaintiff States request that this Court:

      a.      adjudge and decree WMI's acquisition of ADS to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

      b.      preliminarily and permanently enjoin Defendants and all persons acting on their behalf from consummating the proposed acquisition by WMI of ADS or from entering into or carrying out any other contract, agreement, plan, or understanding, the effect of which would be to combine WMI with ADS;

      c.      award the United States and the Plaintiff States the costs for this action;

and

d.      grant the United States and the Plaintiff States such other relief as the

Court deems just and proper.

Dated: October 23, 2020

Respectfully submitted,

COUNSEL FOR PLAINTIFF UNITED STATES:


|  |  |
|---|---|
| <u>          /s/ Makan Delrahim          </u><br>MAKAN DELRAHIM (D.C. Bar #457795)<br>Assistant Attorney General<br>Antitrust Division | <u>          /s/ Katrina H. Rouse          </u><br>KATRINA H. ROUSE (D.C. Bar #1013035)<br>Chief<br>Defense, Industrials, and Aerospace Section<br>Antitrust Division |

<u>          /s/ Makan Delrahim          </u>
MAKAN DELRAHIM (D.C. Bar #457795)
Assistant Attorney General
Antitrust Division

<u>          /s/ Bernard A. Nigro, Jr.          </u>
BERNARD A. NIGRO, JR.
(D.C. Bar #412357)
Principal Deputy Assistant Attorney General
Antitrust Division

<u>          /s/ Alexander P. Okuliar          </u>
ALEXANDER P. OKULIAR
(D.C. Bar #481103)
Deputy Assistant Attorney General
Antitrust Division

<u>          /s/ Kathleen S. O'Neil          </u>
KATHLEEN S. O'NEIL
Senior Director of Investigations and
Litigation
Antitrust Division

<u>          /s/ Katrina H. Rouse          </u>
KATRINA H. ROUSE (D.C. Bar #1013035)
Chief
Defense, Industrials, and Aerospace Section
Antitrust Division

<u>          /s/ Jay D. Owen          </u>
JAY D. OWEN
Assistant Chief
Defense, Industrials, and Aerospace Section
Antitrust Division

<u>          /s/ Jeremy W. Cline          </u>
JEREMY W. CLINE* (D.C. Bar #1011073)
STEPHEN HARRIS
GABRIELLA R. MOSKOWITZ
(D.C. Bar #1044309)
KERRIE J. FREEBORN (DC Bar #503143)
DANIEL J. MONAHAN, JR.
VERONICA N. ONYEMA
(D.C. Bar #979040)
Trial Attorneys
Defense, Industrials, and Aerospace Section
Antitrust Division
450 Fifth Street N.W., Suite 8700
Washington, DC 20530
Telephone: (202) 598-2294
Facsimile: (202) 514-9033
Email: jeremy.cline@usdoj.gov

*LEAD ATTORNEY TO BE NOTICED

**FOR PLAINTIFF STATE OF FLORIDA**

ASHLEY MOODY
Attorney General

PATRICIA A. CONNERS
Chief Associate Deputy Attorney General

<u>/s/ Lizabeth A. Brady</u>
LIZABETH A. BRADY
Chief, Multistate Enforcement
Florida State Bar Number: 457991
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel:     (850) 414-3300
Fax:     (850) 488-9134
E-mail: liz.brady@myfloridalegal.com

Colin G. Fraser
Assistant Attorney General
Florida State Bar Number: 104741
E-mail: colin.fraser@myfloridalegal.com

**FOR PLAINTIFF STATE OF ILLINOIS**

KWAME RAOUL
Attorney General

<u>/s/ Joseph B. Chervin</u>
Blake L. Harrop,
Chief, Antitrust Bureau
Joseph B. Chervin
Assistant Attorney General
Office of the Attorney General of Illinois
Antitrust Bureau
100 W. Randolph Street, 11th Floor
Chicago, IL 60601
Telephone: (312) 814-3722
Fax: (312) 814-4209
jchervin@atg.state.il.us

**FOR PLAINTIFF STATE OF MINNESOTA**

KEITH ELLISON
Attorney General
State of Minnesota

JAMES W. CANADAY
Deputy Attorney General

<u>/s/ Justin Moor</u>
JUSTIN MOOR
Assistant Attorney General
Atty. Reg. No. 0397596

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

**FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA**

JOSH SHAPIRO
Attorney General of Pennsylvania

James A. Donahue, III
Executive Deputy Attorney General
jdonahue@attorneygeneral.gov

Tracy W. Wertz
Chief Deputy Attorney General
twertz@attorneygeneral.gov


/s/ Norman W. Marden
Norman W. Marden
(PA Bar #203423)
Senior Deputy Attorney General
nmarden@attorneygeneral.gov

Pennsylvania Office of Attorney General
Antitrust Section
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717)787-4530

**FOR PLAINTIFF STATE OF WISCONSIN**

JOSHUA L. KAUL
Attorney General
State of Wisconsin
Wisconsin Department of Justice

/s/ Shannon A. Conlin
Shannon A. Conlin (Pro Hac Forthcoming)
Assistant Attorney General
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-1677
Conlinsa@doj.state.wi.us

**Appendix A: SCCW Geographic Markets and Number of Significant Competitors Pre-Merger**

| | **Small Container Commercial Waste** | | |
|---|---|---|---|
| | **Geographic Market** | **Counties/Municipalities within Geographic Market** | **Number of Significant Competitors Pre-Merger** |
| 1 | Lee County, Alabama | Lee County, AL | 3 |
| 2 | Macon County, Alabama | Macon County, AL | 2 |
| 3 | Mobile, Alabama | City of Mobile, AL | 3 |
| 4 | Montgomery County, Alabama | Montgomery County, AL | 3 |
| 5 | Tuscaloosa, Alabama | City of Tuscaloosa, AL | 3 |
| 6 | Jacksonville, Florida | Duval, St. Johns, and Clay Counties, FL | 3 |
| 7 | Ocala, Florida | Marion and Citrus Counties, FL | 3 |
| 8 | Augusta, Georgia | Columbia and Richmond Counties, GA and Edgefield and Aiken Counties, SC | 4 |
| 9 | Rochester, Minnesota | City of Rochester, MN | 3 |
| 10 | St. Cloud, Minnesota | City of St. Cloud, MN | 3 |
| 11 | Calumet County, Wisconsin | Calumet County, WI | 2 |
| 12 | Clark, Wisconsin | Clark and Taylor Counties, WI | 3 |
| 13 | Dane County, Wisconsin | Dane County, WI | 3 |
| 14 | Fond du Lac and Sheboygan, Wisconsin | Dodge, Fond du Lac, Ozaukee, Sheboygan, and Washington Counties, WI | 2 |
| 15 | Green Bay, Wisconsin | Brown and Outagamie Counties, WI | 4 |
| 16 | Green County, Wisconsin | Green County, WI | 3 |
| 17 | Green Lake, Wisconsin | Columbia, Green Lake, and Marquette Counties, WI | 2 |
| 18 | Eau Claire, Wisconsin | Chippewa and Eau Claire Counties, WI | 4 |
| 19 | Jackson County, Wisconsin | Jackson County, WI | 3 |
| 20 | Jefferson County, Wisconsin | Jefferson County, WI | 3 |
| 21 | Kenosha County, Wisconsin | Kenosha County, WI | 2 |

| Small Container Commercial Waste | | |
|---|---|---|
| **Geographic Market** | **Counties/Municipalities within Geographic Market** | **Number of Significant Competitors Pre-Merger** |
| 22 Kewaunee County, Wisconsin | Kewaunee County, WI | 2 |
| 23 Langlade, Wisconsin | Langlade, Lincoln, Oneida, and Shawano Counties, WI | 2 |
| 24 Manitowoc County, Wisconsin | Manitowoc County, WI | 3 |
| 25 Mar-Oco, Wisconsin | Marinette and Oconto Counties, WI | 3 |
| 26 Marathon, Wisconsin | Marathon, Portage, and Wood Counties, WI | 3 |
| 27 Milwaukee, Wisconsin | Milwaukee, Racine, and Waukesha Counties, WI | 2 |
| 28 Price County, Wisconsin | Price County, WI | 3 |
| 29 Rock County, Wisconsin | Rock County, WI | 3 |
| 30 Sauk County, Wisconsin | Sauk County, WI | 3 |
| 31 Walworth County, Wisconsin | Walworth County, WI | 3 |
| 32 Waupaca, Wisconsin | Waupaca County, WI | 4 |
| 33 Waushara, Wisconsin | Waushara and Winnebago Counties, WI | 2 |

**Appendix B: MSW Disposal Geographic Markets and Number of Significant Competitors Pre-Merger**

| | **MSW Disposal** | | |
|---|---|---|---|
| | **Geographic Market** | **Counties/Municipalities within Geographic Market** | **Number of Significant Competitors Pre-Merger** |
| 1 | East Central, Alabama | Lee and Macon Counties, AL | 2 |
| 2 | Mobile, Alabama | City of Mobile, AL | 3 |
| 3 | Phenix City, Alabama | Phenix City, AL | 2 |
| 4 | Ocala, Florida | Marion and Citrus Counties, FL | 3 |
| 5 | Atlanta, Georgia | Cherokee, Forsyth, Gwinnett, Fulton, Clayton, and Cobb Counties, GA | 3 |
| 6 | Kane County, Illinois | Kane County, IL | 3 |
| 7 | Lake County, Illinois | Lake County, IL | 3 |
| 8 | Northern Cook County, Illinois | Area west of Interstate 94 and north of Interstate 90 in Cook County, Illinois | 4 |
| 9 | Fort Wayne, Indiana | Allen, Kosciusko, and Whitley Counties, IN | 3 |
| 10 | Detroit, Michigan | Wayne, Macomb and Oakland Counties, MI | 4 |
| 11 | Bedford County, Pennsylvania | Bedford County, PA | 2 |
| 12 | Fayette County, Pennsylvania | Fayette and Greene Counties, PA | 4 |
| 13 | Indiana County, Pennsylvania | Clarion, Jefferson, and Indiana Counties, PA | 3 |
| 14 | Somerset County, Pennsylvania | Cambria and Somerset Counties, PA | 2 |
| 15 | State College, Pennsylvania | Centre and Clearfield Counties, PA | 3 |
| 16 | Dane County, Wisconsin | Dane County, WI | 3 |
| 17 | Eau Claire, Wisconsin | Chippewa and Eau Claire Counties, WI | 2 |
| 18 | Fond du Lac and Sheboygan, Wisconsin | Dodge, Fond du Lac, Ozaukee, Sheboygan, and Washington Counties, WI | 2 |

| | | | |
|---|---|---|---|
| | **MSW Disposal** | | |
| | **Geographic Market** | **Counties/Municipalities within Geographic Market** | **Number of Significant Competitors Pre-Merger** |
| 19 | Greater Green Bay, Appleton, Oshkosh, Wisconsin | Brown, Outagamie, and Winnebago Counties, WI | 2 |
| 20 | Greater Manitowoc, Wisconsin | Calumet, Kewaunee, and Manitowoc Counties, WI | 2 |
| 21 | Green County, Wisconsin | Green County, WI | 3 |
| 22 | Janesville, Wisconsin | Jefferson, Rock, and Walworth Counties, WI | 3 |
| 23 | Milwaukee, Wisconsin | Milwaukee, Racine, and Waukesha Counties, WI | 2 |
| 24 | St. Croix, Wisconsin | Pierce and St. Croix Counties, WI | 3 |